**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| SARA DIAZ-LEBEL, on behalf of herself and all others similarly situated,<br><br>                        Plaintiff,<br>    v.<br><br>TD BANK USA, N.A., and<br>TARGET CORPORATION,<br><br>                        Defendants. | Case No. 0:17-cv-05110-MJD-BRT<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

SARA DIAZ-LEBEL ("Plaintiff"), individually and on behalf of all other persons similarly situated, brings this action against Defendants TD BANK USA, N.A. and TARGET CORPORATION ("Defendants") to stop Defendants' practice of making unsolicited and illegal calls to the telephones of consumers nationwide, and to obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

**INTRODUCTION**

1. Defendants, a national bank and a national retail chain, engage in reckless and aggressive calling practices which outright ignore the federal law and the rights of the called parties.

2. Defendants conducted (and continue to conduct) wide-scale calling campaigns and repeatedly made unsolicited calls to consumers' telephones without consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Defendants made unauthorized calls to Plaintiff's cell phone using an automatic telephone dialing system

("ATDS") and/or "an artificial or prerecorded voice" to contact a party other than Plaintiff. Defendants do not verify the accuracy of consumers' contact information or "scrub" cell phone numbers using any of the publicly available reassigned number lists. As a result, Defendants place tens of thousands of harassing calls to the wrong parties – people with no ongoing business relationship with Defendants and who owe them no debt.

3. Defendants also called Plaintiff after she clearly stated she did not wish to be called again.

4. The TCPA was enacted to protect consumers from unsolicited telephone calls exactly like those alleged in this case. Plaintiff brings this action for injunctive relief and statutory damages resulting from Defendants' illegal actions.

5. By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and the members of a putative Class of consumers (defined below) actual harm, including the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing telephone calls, as well as disruption in the use and enjoyment of their cellular telephones for which they paid valuable consideration.

## PARTIES

6. Plaintiff SARA DIAZ-LEBEL is a natural person and citizen of Methuen, Massachusetts.

7. Defendant TD BANK USA, N.A. (TD Bank") is a corporation that maintains its principal office at 1701 Route 70 East, Cherry Hill, New Jersey 08003. At all times relevant to this lawsuit, Defendant conducted and continues to conduct business in this District.

8.  Defendant TARGET CORPORATION ("Target") is a corporation that maintains its principal office at 1000 Nicollet Mall, Minneapolis, MN 55403. At all times relevant to this lawsuit, Defendant conducted and continues to conduct business in this District.

9.  For example, in its 2016 Annual Report to the SEC, Target reported: "In the first quarter of 2013, we sold our U.S. consumer credit card portfolio, and TD Bank Group (TD) now underwrites, funds, and owns Target Credit Card and Target MasterCard consumer receivables in the U.S. We perform account servicing and primary marketing functions and earn a substantial portion of the profits generated by the portfolio."[1]

10.  Whenever in this complaint it is alleged that Defendants committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification, or approval of Defendants, or was done in the routine normal course and scope of employment of the Defendants' officers, directors, vice-principals, agents, servants, or employees.

## JURISDICTION & VENUE

11.  This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

12.  The Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District. Furthermore, Defendants have purposefully availed themselves of the protections of this District's law, and the exercise of personal jurisdiction over Defendants in this District does not offend traditional notions of fair

---

[1] Target Corp., Form 10-K Annual Report (Mar. 11, 2016), *available at* https://www.sec.gov/Archives/edgar/data/27419/000002741916000043/tgt-20160130x10k.htm.

1341613.3

play or substantial justice.  For these same reasons, venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a).

13.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy in this civil action exceeds the sum or value of $5,000,000.00, exclusive of interests and costs, and at least one member of the putative class is a citizen of a state different from Defendants.  Furthermore, the Plaintiff Class consists of at least one hundred members.  Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991
## (TCPA), 47 U.S.C. § 227

14.     In 1991, Congress enacted the TCPA to address certain practices thought to be an invasion of consumer privacy and a risk to public safety.

15.     The TCPA regulates, among other things, the use of automated telephone equipment, or "autodialers," and prerecorded voices.  Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of an autodialer or prerecorded voice to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

16.     Since the TCPA's passage in 1991, the FCC has taken multiple actions implementing and interpreting the TCPA, and has issued numerous Declaratory Rulings clarifying specific aspects of the TCPA.

17.     According to findings by the FCC, the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.  The FCC also recognized that

wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.[2]

18.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party.[3] The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed."[4]

19.     In the same Declaratory Ruling, the FCC emphasized that creditors and their third party debt collectors are liable under the TCPA for debt collection calls made on the creditors' behalf.[5] ("A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call... A third party collector may also be liable for a violation of the Commission's rules."). As such, Defendants, as the primary creditors, may be held directly liable under the TCPA, even if the calls were placed by a third-party collector acting on their behalf.

20.     The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." § 227(a)(1)(A)-(B). In 2003, the

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

[3] *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991* ("*2008 Order*"), 23 F.C.C.R. 559, 23 FCC Rcd. 559, 43 Communications Reg. (P&F) 877, 2008 WL 65485 (F.C.C. 2008) (¶ 10).

[4] *Id.*

[5] *Id.*

FCC issued an order finding, among other things, "that a predictive dialer falls within the meaning and statutory definition of 'automatic telephone dialing equipment' and the intent of Congress."[6] The 2003 FCC order defined a predictive dialer as "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."[7]  The FCC concluded that "[t]he basic function of such equipment . . . [is] the capacity to dial numbers without human intervention."[8]  The 2008 Declaratory Ruling "affirm[ed] that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[9]  And in yet another order issued in 2012, the FCC again reiterated that the TCPA's definition of an ATDS "covers any equipment that has the specified capacity to generate numbers and dial them without human intervention regardless of whether the numbers called are randomly or sequentially generated or come from calling lists."[10]  In 2018, a decision struck down portions of a 2015 FCC Order, but "the prior FCC Orders are still binding."[11].–

21.     Courts have long held that that a "called party" under the TCPA is the recipient of the call, not the party the caller was intending to reach.[12]

---

[6] *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14,014, 14,093 (2003).

[7] *Id.* at 14,143 n. 31.

[8] *Id.* at 14,092.

[9] 23 FCC Rcd. at 566.

[10] *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 15391, 15399 (2012).

[11] *Reyes v. BCA Fin. Servs., Inc.*, Case No. 16-24077-CIV, 2018 WL 2220417, at *11 (S.D. Fla. May 14, 2018).

[12] *See, e.g.*, *Soppet v. Enhanced Recovery Co., LLC,*, 679 F.3d 637, 638-39 (7th Cir. 2012); *Osorio v. State Farm Bank, F.S.B.,* 746 F.3d 1242, 1251 (11th Cir. 2014).

22. Finally, in a portion unaffected by the D.C. Circuit, the 2015 Order held that consumers may revoke consent through reasonable methods. Thus, consumers may revoke consent through any reasonable method, including orally: "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, directly in response to a call initiated or made by a caller, or at an in-store bill payment location, among other possibilities."[13]

## COMMON FACTUAL ALLEGATIONS

23. TD Bank offers credit through Target-branded credit cards referred to as REDcards, which include Target Credit Cards, Target MasterCard Credit Card, and Target Debit Cards. TD Bank underwrites, funds, and owns the credit card portfolio's receivables, controls risk management policies, and oversees regulatory compliance. Target performs account servicing and primary marketing functions. Even though TD Bank owns this consumer credit card receivables portfolio, Target shares in the economic performance of the credit card program with TD Bank. For example, Target earned $641 million, $629 million, and $555 million of net profit-sharing income during 2015, 2014, and 2013, respectively.[14]

24. Plaintiff brings the present action because Defendants have repeatedly violated the TCPA by calling Plaintiff and the Proposed Class via ATDS and/or a prerecorded of artificial voice without prior express consent. As further detailed herein, Plaintiff was not the debtor Defendants were looking for when Defendants began making unsolicited calls to her cell phone. Defendants knowingly and willfully engaged in this conduct because Defendants continued to place calls to her cell phone and the cell phone numbers of the Proposed Class despite the fact Plaintiff and Class Members requested not to be called.

---

[13] 2015 Order at (¶ 64).
[14] Target Corp., Form 10-K Annual Report, *supra*, n.1.

25. Defendants ignored Plaintiff's and the Proposed Class members' requests and continued to call Plaintiff and the Proposed Class members. Accordingly, Plaintiff, on behalf of herself and all others similarly situated, bring this action to prevent Defendants from engaging in this continued course of conduct and for statutory damages.

### FACTS SPECIFIC TO PLAINTIFF SARA DIAZ-LEBEL

26. Beginning around August 2016, Plaintiff began to receive calls from the phone number 612-815-5881, which is associated with Defendants. At the time Plaintiff filed this lawsuit, she had received at least 26 calls from Defendants.

27. Plaintiff received all calls described above on her cellular telephone assigned a number ending in 9225.

28. Defendants and/or third parties on Defendants' behalf, placed all the calls described above using an ATDS, as defined by 47 U.S.C. § 227(a)(1) without first obtaining Plaintiff's prior express written consent.

29. Plaintiff was able to answer several of these calls and interact with the caller's live representative after being transferred by the dialing system.

30. When Plaintiff answered the calls, there was a momentary pause ("dead air") before Defendants' live representative engaged on the other end of the line.

31. Sometimes Plaintiff was unable to answer calls from Defendants. Defendants' dialing system would always leave a partial "artificial or prerecorded voice," message, as defined by 47 U.S.C. § 227(b)(1)(A), on her voicemail.

32. But, when Plaintiff answered the calls, Plaintiff could always hear background noise she associated with call center chatter as a live operator greeted her following several seconds of dead air.

-8-

33. Defendants' representatives always asked for another individual who, at the time, Plaintiff understood to be "Lee Netta," not Plaintiff.

34. Plaintiff repeatedly told Defendants that they had the wrong party. Yet, Defendants continued to call.

35. Plaintiff never provided Defendants consent to call her for any purpose.

36. At the time of the calls, Plaintiff did not have a Target REDcard. In fact, Plaintiff never had a Target REDcard.

37. Defendants' calls to Plaintiff were a nuisance and an invasion of her privacy. Although she repeatedly asked Defendants to stop calling, Defendants ignored Plaintiff's multiple requests and continued to call her.

38. Based on the circumstances of the calls (*e.g.* dead air, call center noise, large volume of calls, pre-recorded messages), Plaintiff believes Defendants called her cellular telephone using an ATDS that mechanically selected her number from a computer database.

39. On information and belief, Defendants' ATDS called Plaintiff on every occasion.

40. The telephone number Defendants called was assigned to a cellular telephone service for which charges incur for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

41. Plaintiff is the regular carrier and exclusive user of the cellular telephone assigned the number ending in 9225.

42. Defendants' calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

43. Plaintiff did not provide Defendants with prior express consent to place calls to her cellular telephone utilizing an ATDS or artificial or pre-recorded voice, pursuant to 47 U.S.C. § 227 (b)(1)(A) and 47 C.F.R. § 64.1200(a)(3).

44.     All calls Defendants made to Plaintiff violate 47 U.S.C. § 227(b)(1).

45.     Plaintiff has reason to believe Defendants have called, and continue to call, thousands of wireless telephone customers in violation of the TCPA.

46.     Plaintiff's overriding interest is ensuring Defendants cease its illegal debt collection practices and compensate all members of the Plaintiff Class for invading their privacy in the manner the TCPA was contemplated to prevent.

47.     In order to redress injuries caused by Defendants' violations of the TCPA, Plaintiff, on behalf of herself and a class of similarly situated individuals, brings suit under the TCPA, 47 U.S.C. § 227, *et seq.*, which prohibits certain unsolicited voice and text calls to cell phones.

48.     On behalf of the Plaintiff Class, Plaintiff seeks an injunction requiring Defendants to cease all wireless activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

**A.     Class Allegations**

49.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and the following Class defined as follows (the "Class"):

> **Wrong Number Class:** All persons in the United States whose (1) cellular telephone number has been called by Defendants; (2) with an artificial or prerecorded voice and/or an automatic telephone dialing system; and (3) did not have a Target REDcard contract with Defendants, (4) from March 9, 2013 to the date that class notice is disseminated.

50.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents

have a controlling interest, and its current or former employees, officers, and directors; (3) Plaintiff's counsel and Defendants' counsel; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendants have been fully and finally adjudicated and/or released.

51.     This suit seeks only damages, statutory penalties, and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.

52.     Plaintiff reserves the right to expand the Class definitions to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

53.     Plaintiff and members of the Class were harmed by Defendants' acts in at least the following ways: Defendants, either directly or through agents, illegally contacted Plaintiff and the Class' members *via* their cellular telephones by using an ATDS and/or prerecorded voice, thereby causing Plaintiff and the Class members to incur certain cellular telephone charges or reduce cellular telephone time for which Plaintiff and the Class members previously paid; continuing to call Class members after they requested the calls cease; and invading the privacy of Plaintiff and the Class members by subjecting them to annoying and harassing calls that constitute a nuisance.

**B.     Numerosity**

54.     The exact sizes of the Class are unknown and not available to Plaintiff at this time, but the Class can be identified easily through records maintained by Defendants and/or

their agents. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

54. 55. On information and belief, Defendants made telephone calls to thousands of consumers who fall into the definition of the Class.

**C.    Commonality and Predominance**

56. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

57. Common questions for the Class include, but are not necessarily limited to the following:

   a. Whether Defendants' conduct violated the TCPA;

   b. Whether Defendants made non-emergency auto-dialed or pre-recorded calls to Plaintiff and Class Members;

   c. Whether Defendants can meet their burden of showing they obtained prior express consent (*i.e.*, consent that is clearly and unmistakably stated) to make such calls;

   d. Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct; and

   e. Whether Defendants and its agents should be enjoined from engaging in such conduct in the future.

**D.    Typicality**

58. As a person who received telephone calls using an automatic telephone dialing system and/or an artificial or prerecorded voice, without her prior express consent within the meaning of the TCPA, Plaintiff's claims are typical of the claims of the other members of the Class.

1341613.3

59. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

**E.     Adequate Representation**

60. Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions.

61. Plaintiff has no interest antagonistic to those of the Class, and Defendants has no defenses unique to Plaintiff.

62. Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes, including claims under the TCPA.

**F.     Policies Generally Applicable to the Class**

63. This class action is appropriate for certification because Defendants has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole.

64. Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

**G.     Superiority**

65. This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable.

66. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions.

67. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendants' misconduct.

68. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint.

69. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
(VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,
47 U.S.C. § 227, *ET SEQ.*)

70. Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

71. The foregoing acts and omission of Defendants constitute numerous and multiple violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq.*

72. As a result of Defendants' violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class Members are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

73.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## SECOND CAUSE OF ACTION
### (KNOWING AND/OR WILLFUL VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*)

74.     Plaintiff hereby incorporates by reference and re-alleges each and every allegation set forth in each and every preceding paragraph of this Complaint, as though fully set forth herein.

75.     The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above cited provisions of 47 U.S.C. § 227, *et seq*.

76.     As a result of Defendants' violations of 47 U.S.C. § 227, *et seq.*, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

77.     Plaintiff and the Class members are also entitled to and seek injunctive relief prohibiting such conduct in the future.

## JURY DEMAND

78.     Plaintiff, individually and on behalf of the Class, demand a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for relief and judgment as follows:

1.     For Defendants' violations of 47 U.S.C. § 227(b)(1), an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227, *et seq.*;

1341613.3

2.      For Defendants' willful and or knowing violations of 47 U.S.C. § 227(b)(1), an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227, *et seq.*;

3.      Preliminary and permanent injunctive relief enjoining Defendants, its agents, servants and employees, and all persons acting in concert with them, from engaging in, and continuing to engage in, the unlawful calls made with a prerecorded or artificial voice and/or automated dialing systems to cellular phones without prior express consent, placing calls to the wrong number;

4.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiffs as counsel for the Class; and

5.      An award of attorneys' fees and costs and any and all other relief that the Court deems just and proper.

Dated:  May 22, 2018                         LIEFF, CABRASER, HEIMANN
                                                                     & BERNSTEIN, LLP

                                                                     By: */s/  Daniel M. Hutchinson*
                                                                           Daniel M. Hutchinson

                                                                     Daniel M. Hutchinson
                                                                     Email: dhutchinson@lchb.com
                                                                     275 Battery Street, 29th Floor
                                                                     San Francisco, California  94111-3339
                                                                     Telephone:  (415) 956-1000
                                                                     Facsimile:  (415) 956-1008
                                                                     *(Admitted Pro Hac Vice)*

                                                                     Andrew R. Kaufman
                                                                     Email: akaufman@lchb.com
                                                                     222 Second Avenue South, Suite 1640
                                                                     Nashville, TN 37201

Telephone: (615) 313-9000
Facsimile: (615) 313-9965
(*Admitted Pro Hac Vice*)

HUGHES ELLZEY, LLP
Jarrett L. Ellzey
Email: jarrett@hughesellzey.com
W. Craft Hughes
Email: craft@hughesellzey.com
2700 Post Oak Blvd., Ste. 1120
Galleria Tower I
Houston, TX 77056
Telephone: (713) 554-2377
Facsimile: (888) 995-3335
*(Admitted Pro Hac Vice)*


SIRI & GLIMSTAD LLP
Aaron Siri
Email: aaron@sirillp.com
Mason Barney
Email: mbarney@sirillp.com
200 Park Avenue, 17th Floor
New York, New York 10166
Telephone: (212) 532-1091
Facsimile: (646) 417-5967
*(Admitted Pro Hac Vice)*

LOCKRIDGE GRINDAL NAUEN P.L.L.P.
Robert K. Shelquist, #21310X
Email: rkshelquist@locklaw.com
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981

*Attorneys for Plaintiff and the Proposed Class*